681 P.2d 925

The STATE of Arizona, Appellee,

v.

Adolfo Olivas SALCIDO, Appellant.

No. 2 CA–CR 3081.

Court of Appeals of Arizona,
Division 2.

May 7, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

Haythornewhite & Sedgwick by Joseph R. McKinney, Nogales, for appellant.

OPINION

BIRDSALL, Chief Judge.

Following a jury trial, appellant was convicted of one count of possession of marijuana for sale, a class 4 felony, and one count of unlawful transportation of marijuana, a class 2 felony. He was sentenced only on the class 2 felony conviction, receiving a term of five years' probation with 60 days in the Santa Cruz County Jail, and a fine with a surcharge in the total amount of $685.

On appeal, appellant contends that the trial court committed reversible error in (1) refusing to give a corrective instruction to the jury following the prosecutor's improper comment in his opening argument on the appellant's exercise of his right to remain silent and right to counsel, and (2) refusing to grant appellant's motion for a mistrial following the prosecutor's closing argument, which included comments based on the prosecutor's personal knowledge.

Appellant was arrested after his entry into the United States from Mexico following an inspection of the 1970 Volkswagen van he was driving which revealed approximately 37 pounds of marijuana concealed in the vehicle. The testimony of the state's witnesses, which was not contradicted by

appellant, was that the original gas tank in the van had been removed and a considerably smaller tank had been affixed to the outside spout, thereby creating a large space around the new tank into which the marijuana was placed.

Appellant's defense rested on his avowed lack of knowledge as to the presence of the marijuana in the van. Appellant testified that he had borrowed the van from a friend whom he knew only by the name of Nicholas in order to drive his sister-in-law from Mission Hills, California, to Hermosillo, Mexico. He further testified that on the trip from California to Nogales, Arizona, he had stopped three times for gas, each time putting in more than five gallons. While in Hermosillo, appellant and his sister-in-law attended a party where they lent the van to a man previously unknown to them named Jose, who kept the van for about three hours. Appellant's sister-in-law testified to the same effect. After spending about seven or eight days in Hermosillo, appellant drove to Nogales, stopping only once for gasoline. The implication of appellant's testimony was that the gas tank must have been altered while he was in Hermosillo, and that he had no reason to know that the alteration had occurred.

The credibility of appellant's testimony concerning his lack of knowledge of the presence of the marijuana or the alteration to the gas tank was clearly a major factor in the case. The state attempted to undermine appellant's credibility by presenting evidence pertaining to the size of the new gas tank. Colin Christensen, a customs inspector, testified that from his visual inspection the new tank appeared to have a capacity of about one gallon. Louis Chaboya, a criminal investigator with the department of public safety, testified that by looking at the new tank and feeling it, he estimated its dimensions at approximately one foot by one-and-a half feet by six to ten inches. He further testified that the distance from Hermosillo to Nogales was approximately 150 miles. The thrust of this testimony was obviously to establish the inherent incredibility of appellant's testimony regarding the size of the gas tank and his lack of knowledge as to the alteration.

In his response to appellant's counsel's closing argument, the prosecutor argued to the jury as follows:

"In addition, he made a big deal about where's the gas tank, where are the fingerprints? This inevitably comes up. My power here, being the representative of the State of Arizona, is I can subpoena witnesses and bring them in and I can have experts look at things and dust things for fingerprints and I can have the car torn apart if I want and have the gas tank brought in here. So can Mr. McKinney [appellant's counsel]. He didn't do it and yet he would have you believe that he really wished we did bring in that tiny gas tank. *Well, I went over with the agents at lunch time and saw the tank* and Mr. McKinney, if he really wanted that tank here, he could have the, had had the tank here just as easily as I could have. The tank is located, it happens to be in a very hard to reach part of the car and there's really no need to do so when the agents have, in fact, seen the tank and can testify where it is and its size. So, there's just no need to do it. I didn't see the need to do it and, but apparently Mr. McKinney didn't see the need to do it either. He has just the same subpoena power as I do or he can ask me to do it and I can have it done. That wasn't done in this case and the fact that it wasn't done should not create any reasonable doubt in your mind." (Emphasis added)

Immediately following the prosecutor's closing argument, appellant made a motion for mistrial based on the prosecutor's statement concerning his inspection of the gas tank as well as his subsequent statement in closing argument that "I haven't had [a case] yet where we've had any fingerprints on the gas tank." The trial court denied the motion.

Appellant argues that the prosecutor's statements quoted above were, at a minimum, an insinuation that the state's wit-

nesses were more truthful than appellant, and at worst an attempt to bring evidence before the jury which was not presented at trial, i.e., the prosecutor's personal knowledge of the size of the new gas tank. Since the credibility of the witnesses as to the size of the gas tank was the pivotal issue in the case, appellant argues, the jury was surely influenced by the prosecutor's remarks and appellant was thereby prejudiced. We agree.

◼ A lawyer is prohibited, both by judicial precedent and by the canons of ethics, from asserting his personal knowledge of the facts in issue before a tribunal, unless he is testifying as a witness. Rule 29(a), Rules of the Supreme Court, 17A A.R.S. (DR 7–106(C)(3)); *State v. Bailey*, 132 Ariz. 472, 647 P.2d 170 (1982); *State v. King*, 110 Ariz. 36, 514 P.2d 1032 (1973). Although attorneys are given wide latitude in their arguments to the jury, an attorney may not refer to evidence which is not in the record, nor may he "testify" as to matters not in evidence. *State v. Bailey*, supra. In criminal cases, a prosecutor has a special obligation to avoid "improper suggestions, insinuations, and especially assertions of personal knowledge." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935).

◼ Similarly, it is improper for the prosecution to vouch for the credibility of the state's witnesses. The United States Court of Appeals for the Ninth Circuit discussed the problem in a similar case as follows:

"... Vouching may occur in two ways: the prosecution may place the prestige of the government behind the witness or may indicate that information not presented to the jury supports the witness's testimony. [citations omitted]
The first type of vouching involves personal assurances of a witness's veracity and is not at issue here.
The second type of vouching involves prosecutorial remarks that bolster a witness's credibility by reference to matters outside the record. [citation omitted] It may occur more subtly than personal

vouching, and is also more susceptible to abuse. This court has declared that such prosecutorial remarks may be fatal if:
'... the remarks, fairly construed, were based on the District Attorney's personal knowledge apart from the evidence in the case and that the jury might have so understood them.' [citation omitted]"
*United States v. Roberts*, 618 F.2d 530, 533–534 (9th Cir.1980).

Our supreme court has set forth criteria for determining if improper statements are unduly prejudicial:

"The best rule for determining whether remarks made by counsel in criminal cases are so objectionable as to cause a reversal of the case is, Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by these remarks." *Sullivan v. State*, 47 Ariz. 224, 238, 55 P.2d 312, 317 (1936).

◼ In the present case, whether the prosecutor's remarks are viewed as "testimony" from his personal knowledge or as vouching for the credibility of the state's witnesses, they were clearly improper and called to the jurors' attention facts which were not in evidence and which pertained to crucial matters for the jury's determination. The tenor of the argument implied the prosecutor's recognition that the testimony of his witnesses regarding the size of the gas tank might not be sufficient to undermine the appellant's credibility in the eyes of the jury, and there is a strong probability that the subsequent verdict was influenced by his remarks. The trial court erred in refusing to grant appellant's motion for a mistrial.

Since the judgment must be reversed and the matter remanded for a new trial, we find it necessary to address the first issue raised by appellant. In his opening argument to the jury, the prosecutor stated:

"As I told you before, we do not have a confession today. Mr. Salcido was read

his rights and at that point, he indicated he wanted a lawyer, all questions stopped. We think based on the evidence that we will show you today, that there was, in fact, proof beyond a reasonable doubt, there will be, in fact, proof beyond a reasonable doubt that he, in fact, knew the thirty-seven pounds of marijuana were in the back of that VW van and at that time, we will ask for your verdict of guilty."

Appellant's counsel immediately objected on the basis that the prosecutor had impermissibly commented on appellant's exercise of his right to remain silent. The prosecutor professed ignorance that such comments were not permitted. Appellant's counsel requested a corrective instruction to the jury, which was denied by the trial court.

 The Arizona Supreme Court has attempted on numerous occasions to impress upon the prosecuting attorneys for this state the serious impropriety of any reference whatsoever to the silence of an accused following arrest. Most recently, in *State v. Sorrell*, 132 Ariz. 328, 645 P.2d 1242 (1982), the court stated:

> "We believe that a further comment is necessary. Nine years ago, in a case also involving post-arrest silence, this court warned prosecutors very clearly about 'approaching the precipice of fundamental error' while relying on the harmless error doctrine. *State v. Anderson*, supra, 110 Ariz. [238] at 241, 517 P.2d [508] at 511. Four years ago, in another case involving failure to speak when arrested, we said, finding no reversible error:
>
> '*In the future*, the state should scrupulously avoid any indication that the accused kept silent after arrest.' *State v. Bowie*, supra, 119 Ariz. [336] at 341, 580 P.2d [1190] at 1195 (Emphasis added)
>
> In this case, the State has approached the precipice of reversible error once too often." 132 Ariz. at 330, 645 P.2d 1242.

The prosecutor in this case should now stand apprised of the impropriety of comments such as those made before the trial court in this case, and we assume that such statements will not recur in any subsequent trial.

The judgment of conviction and sentences are reversed, and the matter is remanded to the trial court for further proceedings.

HOWARD, J., and LINA S. RODRIGUEZ, Superior Court Judge, concur.

NOTE: Hon. James D. Hathaway having recused himself in this matter, Hon. Lina S. Rodriguez was called to sit in his stead and participate in the determination of this decision.