NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAY CHRISTOPHER GRADY, *Appellant.*

No. 1 CA-CR 14-0834
FILED 10-01-2015

Appeal from the Superior Court in Yuma County
No. S1400CR201200678
The Honorable David M. Haws, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Myles Braccio
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Edward F. McGee
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge John C. Gemmill joined.

_____

**C A T T A N I**, Judge:

¶1          Jay Christopher Grady appeals his conviction of aggravated assault. For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2          In mid-March 2012, the victim and his father-in-law drove to Martinez Lake in Yuma County to pick up the victim's boat. The victim lived in California but for many years had vacationed at the lake. They arrived around 10:30 p.m. on a Friday night and went to a nearby bar for drinks.

¶3          The victim and his father-in-law sat by themselves at a table across the bar from a large group. After about half an hour, the victim bought a second round of drinks, and an inebriated woman named Lisa sat down at the table across from them. Lisa was physically carried out of the bar by her friends a short time later.

¶4          Within about a minute, Grady walked up behind the victim, spun him around by the shoulder, and punched him in the throat while saying "you dissed my buddy's wife." When the victim came to, he could not talk, had difficulty breathing, and sought medical attention. His father-in-law also had been knocked out, and the victim stayed with him while waiting for an ambulance to arrive. After an EMT found no immediate life-threatening injuries, the victim declined to go to the hospital.

¶5          The victim and his father-in-law drove home the next morning, and the victim sought medical treatment there. According to the victim, medical imaging two days later showed that he had fractured his larynx and that, had the fracture shifted, it could have blocked his airway.

¶6          A Yuma County Sheriff's deputy interviewed Grady several weeks after the incident. Grady admitted striking the victim once and seemed apologetic, but stated that he had walked over to talk and the victim

2

had raised his elbow (albeit without striking him), and that he had responded by striking the victim.

¶7　　　　The State charged Grady with one count of aggravated assault, and the jury convicted him of the offense. Grady timely appealed after the court imposed 48 months of supervised probation. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4033(A).[1]

## DISCUSSION

### I.　　Amending the Indictment to Conform to the Evidence.

¶8　　　　Grady argues the superior court erred by granting the State's motion during closing argument to amend the indictment to reflect that the aggravated assault resulted in a "torn larynx" instead of a "fractured thyroid." We review an order amending the indictment for an abuse of discretion. *State v. Johnson*, 198 Ariz. 245, 247, ¶ 4, 8 P.3d 1159, 1161 (App. 2000).

¶9　　　　Arizona Rule of Criminal Procedure 13.5(b) permits amendment of an indictment "to correct mistakes of fact or remedy formal or technical defects," and provides that the indictment "shall be deemed amended to conform to the evidence adduced at any court proceeding." A defect is "formal or technical" if its correction "does not operate to change the nature of the offense charged or to prejudice the defendant in any way." *State v. Freeney*, 223 Ariz. 110, 112, ¶ 11, 219 P.3d 1039, 1041 (2009) (citation omitted).

¶10　　　　Here, Grady was charged with one count of aggravated assault "by any means of force which causes . . . temporary but substantial loss or impairment of any body organ or part, or a fracture of any body part, to-wit: defendant struck victim in the throat causing a fractured thyroid and voice box." At trial, the victim testified that he had suffered a fractured larynx. But he also enumerated several ramifications of the injury, including trouble breathing for a week, trouble speaking for three months, and swelling of his neck for a year.

¶11　　　　Defense counsel's closing argument focused primarily on the absence of medical testimony or records to substantiate the victim's claimed injury, but he also pointed out, in reference to the indictment, that he had "not heard anything about a fractured thyroid at all in this whole hearing."

---

[1]　　　Absent material revisions after the relevant date, we cite a statute's current version.

3

The court noted that the indictment could be amended to conform to the evidence, and after defense counsel concluded his closing, the State moved to amend the indictment to reflect that "the victim suffered a torn larynx instead of the other portions." The court allowed the amendment over a defense objection that the amendment would alter the charges. Defense counsel did not ask to reopen the evidence or for an opportunity to supplement his closing argument in the wake of the amendment.

¶12      The superior court did not abuse its discretion by permitting what was at most a formal or technical amendment. Although the indictment originally alleged that Grady's punch to the victim's throat caused "a fractured thyroid and voice box," "voice box" is a colloquial term for the larynx. *See American Heritage Dictionary* 1940 (5th ed. 2011) (defining "voice box" as "[t]he larynx"). Thus, the amendment to reflect a "torn larynx" thus only narrowed the indictment by removing the reference to a "fractured thyroid," and substituting a synonym ("larynx") for the originally-alleged "voice box."

¶13      The amendment after defense counsel had completed closing argument did not deprive Grady of adequate notice of and opportunity to defend against the newly asserted charges. *See Johnson*, 198 Ariz. at 249, ¶ 13, 8 P.3d at 1163. Grady's counsel in fact defended against the charges as amended, focusing primarily on the lack of medical evidence to establish any substantial injury to the victim, and he did not seek to supplement his closing after the court granted the amendment.

¶14      Grady further asserts that the prosecutor's characterization of the injury as a "torn" rather than "fractured" larynx is fatal to the amendment. But an allegation of a torn larynx did not change the conduct alleged or modify the elements of the offense. Grady was still alleged to have punched the victim in the throat, causing "temporary but substantial loss or impairment of any body organ or part, or a fracture of any body part." A.R.S. § 13-1204(A)(3). Even assuming there is a difference between a torn and a fractured larynx, the victim's testimony that he suffered breathing and speaking difficulties along with neck swelling established a substantial impairment of his larynx, and a "temporary but substantial loss or impairment of any body organ or part" and "a fracture of any body part" under § 13-1204(A)(3) are not separate offenses but rather alternative manners in which to commit the same offense. *See State v. Manzanedo*, 210 Ariz. 292, 294, ¶¶ 8–9, 110 P.3d 1026, 1028 (App. 2005) (indicating that consistent or connected acts listed in a statute generally create a single offense that may be committed in different ways, and noting that the Legislature can readily indicate an intent to create multiple offenses "by

enacting separate statutes or, at least, separate subsections"). Accordingly, the superior court did not abuse its discretion by allowing the amendment.

## II.    Prosecutorial Misconduct.

**¶15**        Grady argues that, by stating in closing that the victim had suffered a torn larynx, the prosecutor referred to information not presented to the jury and thus impermissibly vouched for evidence of the victim's injury. Because Grady did not object at trial, we review only for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567–68, ¶¶ 19–20, 115 P.3d 601, 607–08 (2005).

**¶16**        Prosecutorial vouching is a form of misconduct in which the "prosecutor suggests that information not presented to the jury supports the witness's testimony," *State v. Vincent*, 159 Ariz. 418, 423, 768 P.2d 150, 155 (1989), or the prosecutor asserts personal knowledge of facts in issue. *State v. Bible*, 175 Ariz. 549, 601, 858 P.2d 1152, 1204 (1993) (citation omitted).

**¶17**        Prosecutorial misconduct warrants reversal only if "(1) misconduct is indeed present[,] and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial." *State v. Moody*, 208 Ariz. 424, 459, ¶ 145, 94 P.3d 1119, 1154 (2004). We consider all instances of alleged misconduct cumulatively. *State v. Roque*, 213 Ariz. 193, 230, ¶ 164, 141 P.3d 368, 405 (2006). A defendant is not entitled to relief based on an assertion of prosecutorial misconduct unless the misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial," rendering "the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46, 160 P.3d 203, 214 (2007) (citations omitted).

**¶18**        During closing, the prosecutor twice referred to the victim's injury as a torn larynx rather than as a fracture (as the victim had testified). Grady argues that these statements in effect constituted testimony by the prosecutor that the victim's medical files referred to a laryngeal tear.

**¶19**        Even assuming something more than a semantic difference between a laryngeal tear and fracture, however, the prosecutor referred to a torn larynx not as an assertion of personal knowledge, but rather in the context of recounting the evidence presented at trial, including the victim's description of his injuries and the victim's characterization of his doctor's diagnosis. *Compare, e.g., State v. Newell*, 212 Ariz. 389, 403, ¶¶ 64–65, 132 P.3d 833, 847 (2006) (concluding that, absent opinion testimony about the primacy of DNA evidence, the prosecutor's comment that "we all know that DNA is . . . the most powerful investigative tool in law enforcement at

this time" improperly vouched for the strength of the State's case by suggesting evidence not presented to the jury supported the evidence presented), *and State v. Salcido*, 140 Ariz. 342, 343–44, 681 P.2d 925, 926–27 (App. 1984) (concluding that prosecutor's argument that "I went over with the agents and saw the [evidence]" constituted improper vouching both as an assertion of personal knowledge and by directing the jurors' attention to facts not in evidence to bolster the credibility of State's witnesses). The prosecutor's references to a torn larynx did not "call[] to the jurors' attention matters that they should not consider," *Roque*, 213 Ariz. at 224, ¶ 128, 141 P.3d at 399, and did not constitute prosecutorial misconduct.

**CONCLUSION**

¶20        Grady's conviction and sentence are affirmed.

