NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

STEPHEN LESLIE BROWN, *Appellant.*

No. 1 CA-CR 15-0041
FILED 7-19-2016

Appeal from the Superior Court in Maricopa County
No.  CR 2014-109882-001
The Honorable Roland J. Steinle III, Retired Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David A. Simpson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Patricia K. Norris joined.

_____

**J O N E S**, Judge:

**¶1**         Stephen Brown appeals his conviction and sentence for one count of attempt to commit child prostitution, a class 3 felony.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**         In March 2014, a grand jury indicted Brown on two counts of attempted child prostitution for knowingly attempting to cause two undercover officers, posing as minors, to engage in prostitution.  After the start of trial and shortly before the opening statement, the State moved to preclude "any argument, testimony or insinuation that another person committed any of the offenses charged," asserting it had just learned Brown anticipated asserting a third-party culpability defense.  The State also asserted it had just learned that Brown's sister, who the State had subpoenaed to appear as a witness at trial, was expected to testify for the defense that a "homie," whom she knew only as "Reggie," had left his phone at her home the day of the offense.  Brown's sister also indicated Brown had used the phone at a later point and that Brown told her, "We're going to go pick up homie's girl."  The State argued this testimony was improper because it would be used to establish a third-party culpability defense that had not been disclosed by the defense as required by Arizona Rule of Criminal Procedure 15.2(b).  Defense counsel responded that he had not "decided on a particular defense" but thought "the facts should play out as they are."

**¶3**         After reviewing Brown's notice of defenses, the trial court granted the State's motion precluding all evidence regarding a third-party culpability defense.  However, the court stated, "[A]t this point in time, if I get a motion to extend the time, I'll be happy to consider it.  But if I don't

---

[1]         We view the facts in the light most favorable to upholding the verdict and resolve all reasonable inferences against the defendant.  *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

get a motion to extend the time, the third-party defense is precluded."  No motion was made.

¶4            The trial court later clarified that Brown could testify that the phone was not his and that it was someone else's phone, because he had listed mistaken identification as a defense.  But, the court stated Brown would be "crossing the line" into the precluded third-party culpability defense if he "start[ed] suggesting whose phone it was . . . it was some third party's phone and some third party doing it."

¶5            The evidence presented at trial demonstrated that Brown sent text messages and made phone calls offering to act as a pimp for the two officers.  Police recorded video of a meeting in a hotel room wherein Brown accepted purported earnings from one of the officers, who went by the name of Alma.

¶6            The texts and phone calls all came from the cell phone Brown had in his possession at the time of his arrest.  The undercover officers testified it was Brown's voice on the phone calls.  The text messages were sent between about 2:30 p.m. and 8:30 p.m. and were signed "$Stack$A$Dolla$."   After his arrest, Brown acknowledged this was a nickname he sometimes used.  One of the officers testified that Brown had also referred to himself as "Texas P." and answered to that name when he showed up at the hotel to collect money from Alma.

¶7            A Phoenix police detective testified that, after Brown's arrest, Brown acknowledged he had met Alma on Backpage.com.  The officer who posed as Alma testified that Brown had texted her and called her on the number she had listed in her advertisement on Backpage.com.

¶8            At trial, the trial court allowed Brown to testify he was given the phone and was at the hotel room because "Reggie asked me to pick his girlfriend up for him."  Based on the prior ruling, however, the court sustained objections to Brown's testimony that while he was asleep, "a buddy of mine came over," and also precluded jury questions on whose phone it was and why he had gone to the hotel to pick up Reggie's girlfriend.

¶9            Brown denied sending the text messages and making the phone calls.  He testified that he was sleeping from about 12:30 p.m. to 7:30 p.m., and someone else gave him the phone at about 8:00 p.m.   He acknowledged it was him on the video but testified he was in the hotel room because "Reggie asked me to pick up his girlfriend for him."  He asserted he made the incriminating statements heard on the video recording only

because he was nervous and scared after it became apparent Alma was lying to him about being sixteen years old. Ultimately, Brown's sister did not testify.

¶10 The jury convicted Brown of the second count of attempted child prostitution involving the officer posing as Alma but was unable to reach a verdict on the first count involving another undercover officer posing as a minor. On the State's motion, the court dismissed the first count without prejudice. Brown waived a jury trial on the issue of whether he was on probation at the time of the offense, and the court found he was on probation at the time of the offense. The court sentenced Brown to 11.25 years' imprisonment. Brown filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1),[2] 13-4031, and -4033(A).

## DISCUSSION

### I. Preclusion of Brown's Third-Party Culpability Defense

¶11 Brown argues the trial court erred when it precluded his third-party culpability defense because of his failure to timely disclose it. We review rulings on discovery issues for an abuse of discretion. *State v. Connor*, 215 Ariz. 553, 557, ¶ 6 (App. 2007) (citing *State v. Fields*, 196 Ariz. 580, 582, ¶ 4 (App. 1999)).

¶12 Under Arizona Rule of Criminal Procedure 15.2(b), a defendant is required to disclose "all defenses as to which the defendant intends to introduce evidence at trial" and all witnesses whom he intends to call at trial in support thereof within forty days after the arraignment or within ten days after the State files its disclosure, whichever occurs first. Here, Brown never disclosed to the State that he would assert a third-party culpability defense, nor that Brown's sister might be called as a witness. *See supra* ¶ 2. At trial, defense counsel asserted he was not Brown's attorney when the disclosure was filed. However, pursuant to Rule 15.6(a), defense counsel had a continuing duty to "make additional disclosure, seasonably, whenever new or different information subject to disclosure is discovered."

¶13 Rule 15.6(d) states:

> A party seeking to use material and information not disclosed at least seven days prior to trial shall obtain leave of court by

---

[2] Absent material changes from the relevant date, we cite a statute's current version.

4

motion, supported by affidavit, to extend the time for disclosure and use the material or information. If the court finds that the material or information could not have been discovered or disclosed earlier even with due diligence and the material or information was disclosed immediately upon its discovery, the court shall grant a reasonable extension to complete the disclosure and grant leave to use the material or information.

Here, the trial court gave Brown an opportunity to file a motion for extension so that the third-party culpability defense could be properly disclosed, but no motion was made. *See supra* ¶ 3.

**¶14** Rule 15.7 provides several sanctions that the trial court may impose for noncompliance with the rules of discovery. In determining an appropriate sanction, the trial court "'should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible.'" *State v. Roque*, 213 Ariz. 193, 210, ¶ 50 (2006) (quoting *State v. Fisher*, 141 Ariz. 227, 246 (1984)). One sanction available under Rule 15.7 is "[p]recluding or limiting the calling of a witness, use of evidence or argument in support of or in opposition to a charge or defense." Rule 15.6(d) limits the sanction of precluding undisclosed information only where a motion to extend has been granted: "if granted the court may impose any sanction other than preclusion or dismissal listed in Rule 15.7." In *Roque*, our supreme court expounded upon the limited circumstances under which preclusion of evidence should be used as a sanction, stating:

> Prohibiting the calling of a witness should be invoked only in those cases where other less stringent sanctions are not applicable to effect the ends of justice. The court should also consider how vital the precluded witness is to the proponent's case, whether the opposing party will be surprised and prejudiced by the witness' testimony, whether the discovery violation was motivated by bad faith or willfulness, and any other relevant circumstances.

213 Ariz. at 21, ¶ 50 (quoting *Fisher*, 141 Ariz. at 246).

**¶15** Although the trial court did not make a record of the considerations listed in *Roque*, we presume it knew the law and applied it in making its decision. *State v. Lee*, 189 Ariz. 608, 616 (1997). Furthermore, the circumstances support preclusion. The court advised defense counsel it could file a written motion to extend the time for disclosure, but no motion was made. Accordingly, the court could presume that the

undisclosed information could "have been discovered or disclosed earlier" and was not "disclosed immediately upon its discovery." *See* Ariz. R. Crim. P. 15.6(d). As the court reasoned, defense counsel's strategy — to let the facts "play out as they are" and attempt to pin culpability on a previously undisclosed third party known only as "Reggie" — would have undoubtedly caused unfair prejudice to the State by denying it the opportunity to investigate and disprove "Reggie's" culpability. Defense counsel made no showing whatsoever that the third-party culpability defense was "vital" to Brown's defense, but rather told the court, "I haven't decided on a particular defense."

¶16        Under these circumstances, it was well within the trial court's discretion to preclude the undisclosed third-party culpability defense and evidence supporting it. *Cf. State v. Goudeau*, CR-11-0406-AP, 2016 WL 3369231, slip op. at *28, ¶ 167 (Ariz. June 17, 2016) (holding the trial court did not abuse its discretion in precluding third-party culpability evidence on the ground that it was untimely disclosed).

## II.        Limitation on Cross-Examination

¶17        Brown argues the trial court erred when it improperly restricted his right to confront and cross-examine a Phoenix police detective. The State called the detective, who worked in the vice enforcement unit, as a "cold" expert witness to testify about the business, culture, and language of prostitution, and the techniques used by police to investigate child prostitution. The court sustained objections to three questions by defense counsel on cross-examination: (1) "So are the officers encouraging prostitution activity as well?" (2) "With regard to pimps talking to officers, what is the officer's position, or where does the officer stand?" and (3) "Is there any type of common practice with regard to evidence seized as a result of your investigations, physical evidence, like what you do with it?" Outside the presence of the jury, the judge explained that he sustained the objections because it is not a defense that the minor was actually a peace officer posing as a minor, and that entrapment had not been listed as a defense.

¶18        We generally review evidentiary rulings for an abuse of discretion, but we review evidentiary rulings that implicate a defendant's confrontation rights *de novo*. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006). Because Brown failed to raise his constitutional claim at trial, we review this claim for fundamental error only. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).

**¶19**　　　"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984), and citing *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984)). This right is secured in part by the right to cross-examination provided by the Confrontation Clause of the Sixth Amendment. *Davis v. Alaska*, 415 U.S. 308, 315 (1974). Trial judges, however, "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). A defendant's right to present evidence is subject to restriction, moreover, by application of reasonable evidentiary rules. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998).

**¶20**　　　The trial court did not abuse its discretion or violate Brown's confrontation rights by sustaining the objections to the first and second questions. The first question of whether the officers were "encouraging prostitution activity" by their undercover activity was not relevant to any issue at trial, because Brown had not raised an entrapment defense. *See* Ariz. R. Evid. 402 ("Irrelevant evidence is not admissible."). Nor was the second question, "where does the officer stand . . . with regard to pimps talking to officers?" relevant to any issue except entrapment.

**¶21**　　　We are not persuaded by Brown's argument for the first time on appeal that these questions were designed instead to show that Brown had not knowingly attempted to "cause any minor to engage in prostitution," as required for the charged offense, because the "officers' personas were already engaged in prostitution." Under fundamental error review, Brown bears the burden of establishing that the court erred, that the error was fundamental in nature, and that he was prejudiced thereby. *See Henderson*, 210 Ariz. at 568, ¶ 22. Our review reveals no error at all.

**¶22**　　　A person violates A.R.S. § 13-3212(A)(1) when he "knowingly . . . [c]aus[es] any minor to engage in prostitution." Prostitution is defined as "engaging in or agreeing or offering to engage in sexual conduct under a fee arrangement with any person for money or any other valuable consideration." A.R.S. § 13-3211(5). "Sexual conduct" is defined as "sexual contact, sexual intercourse, oral sexual contact or sadomasochistic abuse." A.R.S. § 13-3211(8). The statutory scheme by its plain words prohibits a person from causing any minor to engage in a single act of prostitution, whether or not it is the minor's first act. It is not a defense to the charged crime that the officers posing as minors already engaged in prostitution.

The court accordingly did not fundamentally err in precluding these questions.

**¶23**         It is not clear why the court sustained an objection to the third question regarding whether there was "any type of common practice with regard to evidence seized . . . like what you do with it." In light of defense counsel's trial strategy, this question was apparently designed to elicit whether the vice enforcement unit had a common practice of determining ownership of phones seized from persons arrested for prostitution offenses. Any error in sustaining an objection to this question, however, was harmless. *See Henderson*, 210 Ariz. at 567, ¶ 18 ("Harmless error review places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence."). Defense counsel had already questioned this witness extensively on whether it was possible for law enforcement to determine the owner and retrieve data from seized cell phones to further its investigation into the identity of the suspect. Moreover, the detective had testified that she personally does not rely on information about the owner of cell phones, "because people . . . lend out their phones." Defense counsel also questioned other witnesses on whether the cell phone in Brown's possession had been confiscated and whether any attempt had been made to retrieve data from it. Under these circumstances, any error in precluding this testimony was harmless, because it did not contribute to or affect the verdict. *See id.*

### III.    Prosecutorial Misconduct

**¶24**         Brown argues that the prosecutor engaged in misconduct by improperly appealing to the sympathies of the jurors and by vouching for the State's witnesses. Because Brown failed to object to any of the asserted misconduct at trial, we review for fundamental error. *See State v. Ramos*, 235 Ariz. 230, 234, ¶ 8 (App. 2014) (citing *Henderson*, 210 Ariz. at 567, ¶ 19).

**¶25**         Prosecutorial misconduct "'is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial.'" *State v. Aguilar*, 217 Ariz. 235, 238-39, ¶ 11 (App. 2007) (quoting *Pool v. Superior Court*, 139 Ariz. 98, 108-09 (1984)). To determine whether a prosecutor's remarks are improper, we consider whether the remarks called to the attention of jurors matters they would not be justified in considering and the probability, under the circumstances, that the jurors were influenced by the remarks. *State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000) (quoting *State v. Hansen*, 156 Ariz. 291, 296-97 (1988)). To prevail on his claim, a defendant

must demonstrate that "the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007) (citing *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998)) (internal quotations omitted). The misconduct must be "'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Hughes*, 193 Ariz. at 79, ¶ 26 (quoting *State v. Atwood*, 171 Ariz. 576, 611 (1992), and citing *Lee*, 189 Ariz. at 616).

**¶26**　　　　Because Brown failed to object to any of the claimed misconduct at trial, he bears the burden of establishing that the prosecutor engaged in misconduct, that the misconduct constituted fundamental error, and that the misconduct caused him prejudice. *See Henderson*, 210 Ariz. at 568, ¶ 22. Error is fundamental when it goes to the foundation of the defendant's case, takes from him a right essential to his defense, and is error of such magnitude that he could not possibly have received a fair trial. *Id.* at 567, ¶ 19 (citing *State v. Gendron*, 168 Ariz. 153, 155 (1991), and *State v. Hunter*, 142 Ariz. 88, 90 (1984)). To prove prejudice, the defendant must show that a reasonable jury could have reached a different result absent the error. *Id.* at 569, ¶ 27.

### A.　　　Appeal to Jurors' Sympathies

**¶27**　　　　Brown first argues the prosecutor improperly appealed to the jurors' sympathies by asking them, at the start of her opening statement, to imagine the world of a teenage girl who "hops from motel to motel, bed to bed, stranger to stranger," and is "required to touch men in the most intimate of ways," with a pimp "profiting off of her selling herself," and then advising them "this is not an imaginary world . . . it happens every day here in our community." These remarks, although supported by evidence, were more in the nature of argument, rather than opening statement, and thus were improper on that basis. *See State v. Bible*, 175 Ariz. 549, 601 (1993) ("Opening statement is not a time to argue the inferences and conclusions that may be drawn from evidence not yet admitted.") (citing Charles M. Smith, *Arizona Practice − Civil Trial Practice* § 455, at 395 (1986)). Moreover, it was improper for the prosecutor to ask jurors to place themselves in the role of actual victims of the child prostitution industry, and thereby appeal to the fears or passions of the jury. *See Morris*, 215 Ariz. at 337, ¶ 58 (citing *State v. Comer*, 165 Ariz. 413, 426 (1990)). And although "prosecutors have wide latitude in presenting their closing arguments to the jury," *see id.*, it was also improper to repeat the theme in closing argument. The remarks were not so prejudicial, however, that they rose to the level of fundamental error.

### B.      Vouching

**¶28**      Brown also argues that the State's arguments during closing improperly vouched: (1) for the police vice enforcement unit by stating, "This is what they deal with on a regular basis. This happens, and this happened here;" (2) for all the evidence by stating, "It's our job to do what we can to help you understand the evidence and the law;" (3) "for the entire criminal justice system's penchant for churning out guilty verdicts" by stating "reasonable doubt is not that difficult. It's what we use every single day in criminal cases. Everyday;" (4) by urging the jury to follow its commitment during jury selection to follow the law, because "you have more than enough information, more than enough to find the defendant guilty of these two counts;" and (5) for Detective A.H.'s credibility by assuring the jury that the detective's review of the recording before testifying was just her "doing a good job" to ensure she testified "accurately.**"** Impermissible prosecutorial vouching occurs "(1) where the prosecutor places the prestige of the government behind its witness; [or] (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. Vincent*, 159 Ariz. 418, 423 (1989) (citing *State v. Salcido*, 140 Ariz. 342, 344 (App. 1984)).

**¶29**      Brown's first, second, fourth, and fifth suggestion of error are without merit; these comments, when taken in context, were within the wide latitude afforded the prosecutor in closing arguments. The third point, commenting that "reasonable doubt is not that difficult. It's what we use every single day in criminal cases. Everyday," improperly conveyed to the jury that reasonable doubt is an easy standard to meet. But, the prosecutor cured any improper inference by then referring the jury to the proper standard: "It is not a standard in which we say beyond any doubt or beyond a scintilla of a doubt, or anything of that nature. If you're firmly convinced after paying attention to all of the evidence in this case, then you have to find him guilty." Moreover, the jury was properly instructed on the concept of reasonable doubt, that counsels' arguments were not evidence, and that it should consider only the evidence admitted at trial in reaching its verdicts. There is no indication the jury failed to heed these instructions. *See State v. LeBlanc*, 186 Ariz. 437, 439 (1996) ("Jurors are presumed to follow instructions.") (citing *State v. Herrera*, 174 Ariz. 387, 395 (1993)).

**¶30**      Finally, we are not persuaded that the prosecutor intentionally engaged in improper conduct or acted with indifference or specific intent to prejudice Brown, as would be necessary to reverse on the basis of cumulative error. *See State v. Gallardo*, 225 Ariz. 560, 568, ¶ 35 (2010)

(quoting *Morris*, 215 Ariz. at 335, ¶ 47). On this record, the trial court did not fundamentally err in failing to *sua sponte* strike this argument.

**CONCLUSION**

¶31 Brown's conviction and sentence are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: AA