NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DOUGLAS JAMES GILBERT, *Appellant.*

No. 1 CA-CR 22-0038
FILED 12-29-2022

Appeal from the Superior Court in Yavapai County
No. V1300CR201880062
The Honorable Debra R. Phelan, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Jacob R. Lines
*Counsel for Appellee*

Law Offices of Stephen L. Duncan PLC, Scottsdale
By Stephen L. Duncan
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Peter B. Swann[1] joined.

---

**P A T O N**, Judge:

¶1        Douglas James Gilbert appeals from his convictions and sentences for involving or using minors in drug offenses and for sexual conduct with a minor.  He argues the superior court erroneously denied his motions for mistrial based on prosecutorial error.  He also raises evidentiary challenges to the admission of a witness's testimony.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to upholding the verdicts, resolving reasonable inferences against Gilbert.  *State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015).

¶3        The victim's mother, Linda, received "emotional release" therapy and chiropractic treatment from Gilbert in 2016.  Early that summer, the victim—born in December 1998—told Linda that she had been studying whether psilocybin mushrooms could help treat the victim's ongoing depression.  One July evening at a social event, Linda broached the topic with Gilbert because he had "an extensive background and history in plant medicine."  He said that he "knew all about that" practice and "would be happy to help [her] daughter."

---

[1] Judge Peter B. Swann was a sitting member of this court when the matter was assigned to this panel of the court.  He retired effective November 28, 2022.  In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Swann as a judge *pro tempore* in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2022-162.

¶4        The next month, Gilbert unexpectedly showed up at the victim's workplace and introduced himself to her.  They discussed consuming psilocybin mushrooms to treat her depression.  After a few meetings, Gilbert showed the victim psilocybin mushrooms he had been growing and gave her "detailed instructions" on how to grow them herself.  He helped her set up mushroom-growing equipment at her house and began frequently visiting her there.

¶5        Over the next few months, Gilbert provided the victim with various treatments, including "muscle testing" exercises that involved ingesting psilocybin mushrooms and discussing her past sexual abuse and other traumatic experiences.  Gilbert's wife, Kimberly Korba, assisted in the sessions.  The victim bonded with the couple and visited them at least once a week at their home.  Gilbert and Korba soon became the victim's "main point of friendship and contact."

¶6        As the group's relationship progressed, Gilbert introduced "uncomfortable" sexual topics into his conversations with the victim.  He asked her if she was sexually attracted to him or Korba.  He also offered to give her a chiropractic back adjustment that involved nudity, which she declined.

¶7        That November, Gilbert and Korba took the victim on a camping trip to celebrate her upcoming eighteenth birthday.  When they arrived at the camping site, Gilbert and Korba propositioned her for sex.  Although she resisted their initial advances, the three ultimately engaged in sexual intercourse one night after consuming psilocybin mushrooms.

¶8        The victim experienced a "severe downward spiral" following her birthday and eventually told her parents what had happened on the camping trip.  Upon hearing her disclosure, the victim's father, Marco, "raced" to Gilbert's office, confronted Gilbert and Korba about the accusations, and assaulted Gilbert.  Korba called 9-1-1.  While investigating the incident, a deputy asked Gilbert if he or Korba had ever engaged in sex with the victim, and Gilbert replied that the "only sex was consensual."  The victim subsequently reported the camping trip events to the police.

¶9        A grand jury indicted Gilbert and Korba for involving or using minors in drug offenses, a class two felony (count one), and sexual conduct with a minor, a class six felony (count two).  Korba pled guilty to child abuse with sexual motivation in October 2018 and was sentenced a few months later.  In the factual basis for her guilty plea, she admitted that

she and the victim "shared psilocybin," and she "solicited sex and [had] sex" with the victim.

¶10            At trial, in opening statement, the prosecutor previewed the State's evidence, then stated:

> We, the [S]tate, have got to prove [Gilbert's guilt] with evidence we present. And in proving this case, ladies and gentlemen, the [S]tate can't just present evidence to say maybe it happened, maybe it didn't or I'm pretty sure he committed the crime. The [S]tate has to prove beyond a reasonable doubt and with evidence it produces that the defendant committed the crimes. The best and easiest definition of "reasonable doubt" is what you just heard from [the trial judge], evidence that leaves you firmly convinced. It's not a burden of proof that requires evidence that the crimes were committed beyond all doubt, beyond every doubt or beyond a shadow of a doubt. It's beyond a reasonable doubt.
>
> The [ten] of you have been selected because *we believe* you are reasonable people who will look at this evidence reasonably and rationally. And *we do believe*, ladies and gentlemen, that after you hear from the witnesses about what happened in this case, consider all the evidence relating to the conduct of this professional medical practitioner in Sedona between August and November of 2016, including the evidence from the defendant's wife – *we believe* the burden of proof will be met in this case. (Emphasis added.)

¶11            Gilbert objected on the ground that the prosecutor's "we believe" remarks constituted improper vouching. After the superior court sustained the objection, the prosecutor continued, stating "[w]e believe the evidence will show that the defendant is guilty beyond a reasonable doubt." Gilbert renewed his objection and, outside the jury's presence, moved for a mistrial. The prosecutor argued that because he had made "no reference to a witness," he had not impermissibly vouched.

¶12            In denying the mistrial motion, the superior court concluded that the prosecutor had not "placed the prestige of the government behind its witness" or suggested that "information not presented … supports the witness's testimony." The court also noted that before opening statements it told the jury that attorneys' comments are not evidence, and it would

repeat that instruction before closing arguments. When the jurors returned, the court informed them that it had overruled the earlier objections.

¶13          The State called Korba in its case-in-chief. She admitted that she and the victim had shared mushrooms and engaged in sexual conduct during the camping trip, but she claimed that Gilbert did not participate in the crimes. She testified that the victim had brought the mushrooms on the trip, she had not ingested mushrooms since college, Gilbert had never consumed or grown them, and when Gilbert told the deputy that "the only sex that was had was consensual, [h]e was referring to [her] and [the victim]."

¶14          Korba also recounted Marco's assault on Gilbert. When Korba called 9-1-1, she ultimately panicked and hung up the phone. The prosecutor asked her why she panicked, leading to the following exchange:

> [Korba]: Because I felt completely ashamed that all of this was happening, because I felt like it was my fault because I was the one who did those things with her, so I panicked because I knew all that was going to come up. You know, I wish I didn't, but at the time I was – I was in shock.
>
> [Prosecutor]: It was all your fault?
>
> [Korba]: Yes.
>
> [Prosecutor]: You never told that to police, did you?

¶15          Gilbert objected and requested a bench conference. At the conference, he argued that the prosecutor's question infringed on Korba's constitutional rights to remain silent and have an attorney. The prosecutor agreed that Korba had refused to answer questions following her arrest, but he pointed out that Korba had pleaded guilty and that Gilbert lacked standing to assert a violation of her rights. The court sustained Gilbert's objection, then directed the jury to disregard the objected-to question. Gilbert later unsuccessfully moved for a mistrial based on the question.

¶16          After Korba testified, the State planned to call Natalie McGovern, a hypnotherapist who had shared office space with Gilbert. Gilbert asked the superior court to preclude her testimony on the grounds that it constituted "cut and dry propensity evidence" under Arizona Rule of Evidence ("Rule") 404(b) and was otherwise unduly prejudicial under Rule 403. The State responded that McGovern would testify to her knowledge of Gilbert's interest in, and use of, psilocybin mushrooms,

which was "vitally relevant" to rebut Korba's claims to the contrary. The court allowed the State to elicit testimony from McGovern regarding Gilbert's "use of mushrooms or statements about mushrooms or use of mushrooms," for the purpose of impeaching Korba's assertions and "to show such things as motive, intent, preparation, plan, knowledge, [and bias]" under Rule 404(b). The court further found that the evidence was relevant and admissible under Rules 401 through 403.

¶17        At the end of trial, the prosecutor concluded his initial closing argument by telling the jury, "But we believe—the evidence will show . . . the defendant is guilty of these two crimes and we would ask you to so find." Gilbert moved for a mistrial based on the recurrence of the "we believe" phrase. Finding the "use of the pronoun 'we'" did not constitute vouching or "infect the trial with unfairness," the court denied his motion. In reaching its decision, the court considered the isolated nature of the remarks: "Opening [s]tatement was 45 minutes, approximately, and there were two sentences in which defendant objected. Closing [a]rgument was 32 minutes. There was one final statement using . . . we."

¶18        The jury found Gilbert guilty as charged. The superior court sentenced him to ten years' imprisonment on count one, followed by a lifetime-probation term on count two. We have jurisdiction to hear his timely appeal under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.        The superior court did not abuse its discretion by denying Gilbert's mistrial motions.

¶19        Gilbert argues the superior court incorrectly denied his mistrial motions. *See supra* ¶¶ 12, 15, 17. He further contends the cumulative effect of the prosecutor's errors deprived him of his right to a fair trial. Gilbert characterizes his claims as "prosecutorial misconduct" but does not appear to suggest they implicate the prosecutor's ethical culpability; thus, we use the term "prosecutorial error." *In re Martinez*, 248 Ariz. 458, 470, ¶ 47 (2020) ("When reviewing the conduct of prosecutors in the context of 'prosecutorial misconduct' claims, courts should differentiate between 'error,' which may not necessarily imply a concurrent ethical rules violation, and 'misconduct,' which may suggest an ethical violation.").

¶20        "Because the trial court is in the best position to determine the effect of a prosecutor's comments on a jury, we will not disturb a trial court's denial of a mistrial for prosecutorial [error] in the absence of a clear

abuse of discretion." *State v. Newell*, 212 Ariz. 389, 402, ¶ 61 (2006). To decide whether prosecutorial error warrants a mistrial, courts examine "(1) whether the prosecutor's statements called to the jury's attention matters it should not have considered to reach its decision and (2) the probability that the jurors were in fact influenced by the remarks." *Id.* at ¶ 60. "A declaration of a mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Leteve*, 237 Ariz. 516, 526, ¶ 33 (2015) (citation omitted).

¶21 In considering whether multiple instances of prosecutorial error cumulatively resulted in an unfair trial, we first inspect each asserted instance individually, reviewing objected-to instances for harmless error and applying fundamental-error review to unpreserved claims. *State v. Hulsey*, 243 Ariz. 367, 388, ¶ 88 (2018). After so doing, we assess whether the total impact of any errors we find rendered the trial unfair. *Id.*

### A. The superior court reasonably concluded that the prosecutor's "we believe" statements were not improper vouching because they did not relate to witnesses.

¶22 Gilbert contends he was entitled to a mistrial after the prosecutor allegedly vouched for the strength of the State's evidence by using "we believe" during opening statement and closing argument. Arizona courts recognize two forms of prosecutorial vouching, when the prosecutor (1) "places the prestige of the government behind its witness" or (2) suggests to the jury that information not contained in the record supports its witness's testimony. *State v. Acuna Valenzuela*, 245 Ariz. 197, 217, ¶ 75 (2018) (quotation omitted). The first type of vouching "involves personal assurances of a witness's veracity"; the second type involves "prosecutorial remarks that bolster a witness's credibility by reference to matters outside the record." *Id.* (citation omitted). Prosecutorial error encompasses vouching. *See State v. Salcido*, 140 Ariz. 342, 344 (App. 1984) ("In criminal cases, a prosecutor has a special obligation to avoid 'improper suggestions, insinuations, and[] especially[] assertions of personal knowledge.'") (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935) (modification in original)).

¶23 Gilbert objects to the prosecutor's specific statements during opening that the jury was reasonable and the State's burden of proof would be met during the trial. Similarly, during closing argument, that the evidence would show the defendant's guilt. The superior court reasonably concluded these statements neither placed the prestige of the government

behind the State's witnesses nor suggested that information not presented to the jury supported any witness's testimony and, consequently, that no improper vouching occurred. Instead, the challenged comments in opening statement were tethered to the prosecutor's preceding forecast of the trial evidence and the State's burden of proof. The same goes for the prosecutor's fleeting—and instantly self-corrected—comment in closing argument, which was directly linked to his assertion that the trial evidence proved Gilbert's guilt. Akin to our supreme court's reasoning in *Acuna Valenzuela*, the absence of "I" or "me" in the complained-of remarks supports a conclusion that the prosecutor was not injecting personal opinions into the trial. *See Acuna Valenzuela*, 245 Ariz. at 218, ¶ 84. Furthermore, his comments stand in marked contrast to cases where our supreme court has found improper vouching. *See, e.g.*, *State v. Vincent*, 159 Ariz. 418, 423 (1989) (finding the prosecutor vouched in arguing "the State wouldn't have put [the witness] on the witness stand if [it] didn't believe every word out of his mouth"); *State v. King*, 110 Ariz. 36, 42–43 (1973) (finding the prosecutor vouched in arguing "I don't think [the witness] ever lied to you . . . . The State believes she was telling the truth"). Even assuming the prosecutor should have refrained from saying "we believe," the superior court's instructions that attorneys' comments are not evidence would have alleviated any potential vouching error. *See State v. Payne*, 233 Ariz. 484, 512, ¶ 109 (2013) ("When improper vouching occurs, the trial court can cure the error by instructing the jury not to consider attorneys' arguments as evidence."). Accordingly, because the superior court was in the best position to determine what effect the State's remarks might have had on the jury, we find no abuse of discretion in its refusal to grant a mistrial.

**B. The superior court did not err by denying Gilbert's mistrial motion over an alleged violation of witness Korba's right to remain silent.**

**¶24** Gilbert also argues the superior court should have granted his mistrial motion based on the prosecutor's allegedly impermissible comment on Korba's exercising her right to remain silent. Prosecutors are constitutionally barred from commenting, directly or indirectly, on a defendant's choice not to testify. *State v. Rutledge*, 205 Ariz. 7, 12, ¶ 26 (2003). "Whether a prosecutor's comment is improper depends upon the context in which it was made and whether the jury would naturally and necessarily perceive it to be a comment on the defendant's failure to testify." *Id.* at 13, ¶ 33. "We must look to the entire record and to the totality of the circumstances." *Id.*

¶25         Gilbert's argument is meritless for several reasons. First, he makes no attempt to explain how any comment on *Korba's* alleged exercise of the right to pretrial silence would "naturally and necessarily" call the jury's attention to *his* decision not to testify. *Id.*; *see State v. Moody*, 208 Ariz. 424, 452, ¶ 101 n.9 (2004) ("Merely mentioning an argument is not enough."). Nor does he cite any legal authority supporting the proposition that due process forbids comments on a witness's silence. *See Moody*, 208 Ariz. at 452, ¶ 101 n.9 ("Failure to argue a claim usually constitutes abandonment and waiver of that claim.") (citation omitted).

¶26         Second, when Korba pleaded guilty in the case years earlier, she expressly waived constitutional rights, including her privilege against self-incrimination. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *State v. Allen*, 223 Ariz. 125, 127, ¶ 13 (2009). But even if the prosecutor's question implicated a constitutional right that survived Korba's guilty plea, it belonged to her alone; Gilbert cannot vicariously assert it. *See Rakas v. Illinois*, 439 U.S. 128, 140 n.8 (1978); *State v. McElyea*, 130 Ariz. 185, 187–88 (1981).

¶27         Third, read in context, the challenged question continued a line of inquiry into Marco's assault, which occurred more than a year before Korba's arrest on the instant charges. The relevant protections of the Fifth Amendment do not apply in such a setting. *See State v. VanWinkle*, 229 Ariz. 233, 236–37, ¶¶ 11–15 (2012) (explaining the right to pretrial silence does not attach in a pre-custody encounter, even where police questioning is involved). Nor did she remain silent during the assault incident. Thus, the question was not improper, and the superior court would have been justified in overruling the initial objection to it.

¶28         Finally, the superior court's curative instruction sufficiently cured any possible prejudice. *See State v. Almaguer*, 232 Ariz. 190, 199, ¶ 29 (App. 2013). Accordingly, we find no error, prosecutorial or otherwise, in the cited instance.

### C. Because there was no error, there was no cumulative prosecutorial error.

¶29         Gilbert asserts the alleged prosecutorial errors cumulatively deprived him of a fair trial. Having concluded that no error exists in any of the cited instances, his cumulative-effect argument necessarily fails. *See State v. Bocharski*, 218 Ariz. 476, 492, ¶ 75 (2008) ("Absent any finding of [prosecutorial error], there can be no cumulative effect of [error] sufficient to permeate the entire atmosphere of the trial with unfairness.").

**II.** **The superior court did not err by admitting McGovern's testimony.**

**¶30** Gilbert protests the admission of McGovern's testimony on two evidentiary grounds, asserting the superior court (1) improperly admitted "other-acts evidence without making a specific finding for admissibility under Rule 404(c)" and (2) violated *State v. LaBarre*, 115 Ariz. 444 (App. 1977), by allowing the State to call McGovern "for purposes of impeaching [its] own witness." We review evidentiary rulings for an abuse of discretion. *Acuna Valenzuela*, 245 Ariz. at 207, ¶ 11.

**¶31** We initially address Gilbert's claims together because they succumb to the same fatal flaw: he did not challenge the superior court's decision to admit McGovern's testimony under Rule 404(b), *see supra* ¶ 16, and has waived any claim of error on that issue. *State v. Carver*, 160 Ariz. 167, 175 (1989); *see State v. Aleman*, 210 Ariz. 232, 236, ¶¶ 8–10 (App. 2005) (failing to address alternative grounds for a ruling may result in waiver of the issue altogether). Given that the court's Rule 404(b) ruling independently supported the admission of McGovern's testimony, his failure to confront it disposes of his arguments on appeal. *See State v. Wassenaar*, 215 Ariz. 565, 577, ¶ 50 (App. 2007) (The court may affirm "on any basis supported by the record."); *State v. Inzunza*, 234 Ariz. 78, 86, ¶ 28 (App. 2014) ("[A]n appellant always carries the burden of demonstrating an error that entitles him to relief.").

**¶32** Moreover, Gilbert's arguments lack specificity, which hinders our review. He does not identify any statements that he alleges should have been excluded, nor does he provide record citations telling us where we may find them. *See* Ariz. R. Crim. P. 31.10(a)(7) (opening briefs must contain argument with supporting citations to the record and legal authorities); *State v. Thompson*, 252 Ariz. 279, 295–96, ¶ 57 (2022) (Appellant waived a claim by failing to develop argument and sufficiently cite the record.). He does not explain why any such statements would implicate Rule 404(c) or constitute improper impeachment. Under these circumstances, we have no basis to disturb the superior court's ruling.

**¶33** Waiver aside, Gilbert's claims lack merit. Although he correctly points out that Rule 404(c)(1)(D) directs courts to make certain findings before admitting other-act evidence under Rule 404(c), that screening requirement was simply not triggered here, given that the State did not introduce, nor did the superior court admit, any of McGovern's testimony under that rule. *See State v. Aguilar*, 209 Ariz. 40, 49, ¶ 30 (2004) (listing the "three determinations" courts must make before admitting

evidence under Rule 404(c) "to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the charged sexual offense").

**¶34**      Even if Gilbert identified any testimony implicating Rule 404(c), the failure to make express findings does not require reversal. *See id.* at 50, ¶ 37. And insofar as Gilbert suggests Rule 404(c) was the sole mechanism for introducing McGovern's testimony, he is incorrect. *See State v. Rhodes*, 219 Ariz. 476, 479–80, ¶ 14 (App. 2008) (explaining Rule 404(c) does not supersede the remainder of Rule 404 in sexual-misconduct cases but merely supplements it); *see also State v. Scott*, 243 Ariz. 183, 187–88, ¶¶ 13–16 (App. 2017) (upholding the admission of evidence of a prior sexual assault under Rule 404(b) in a sexual-assault prosecution).

**¶35**      Nor does *Labarre* provide Gilbert relief. There, we explained that traditionally, "evidence of prior out-of-court statements by a party's own witness" was admissible for impeachment purposes "only when (a) the witness's testimony had been prejudicial to the party calling him and (b) the nature of the testimony actually given came as a surprise." *LaBarre*, 115 Ariz. at 448–49. Here, the State did not attempt to impeach Korba with her prior inconsistent statements, and Rule 607—which became effective a few months after we issued *Labarre*—eliminated the prejudice and surprise requirements for impeaching a party's own witness. *State v. Acree*, 121 Ariz. 94, 96 (1978). Thus, *Labarre* is inapposite. Because Gilbert limits his challenge solely to his *Labarre*-based argument, we do not reach whether the superior court properly admitted any of McGovern's statements for impeachment purposes.

## CONCLUSION

**¶36**      We affirm.

